IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| NATHANIEL LEGORE, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 16-cv-1137-NJR |
| KRISTA ALLSUP, JEANETTE COWAN, DUSTIN DETHROW, FRANK LAWRENCE, JOHN TROST, and ILLINOIS DEPARTMENT OF CORRECTIONS,[1] | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on motions for summary judgment filed by John Trost (Docs. 78, 79) and Krista Allsup, Jeanette Cowan, Dustin Dethrow, Frank Lawrence, and Illinois Department of Corrections (Docs. 85, 86). Plaintiff Nathaniel LeGore has filed a response to both motions (Docs. 89 and 88, respectively).

BACKGROUND

On October 14, 2016, Plaintiff Nathaniel LeGore, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Western Illinois Correctional Center ("Western"), filed his Complaint alleging deliberate indifference to his medical needs while he was at Menard Correctional Center ("Menard"), as well as

---

[1] Frank Lawrence has identified himself as the current warden of Menard and thus the proper party for LeGore's request for injunctive relief. The Clerk is DIRECTED to SUBSTITUTE Frank Lawrence in place of Warden of Menard. Further, Counselor Allsup and Counselor Cowan have identified themselves by their proper names: Krista Allsup and Jeanette Cowan. The Clerk is DIRECTED to CORRECT the names on the docket to reflect Defendants' proper names.

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e (Doc. 1). LeGore was allowed to proceed on the following two counts:

> Count 1: Defendants exhibited deliberate indifference to LeGore's serious medical needs in violation of the Eighth Amendment when they refused to honor his low bunk permit, assigned him to a top bunk without a ladder or steps beginning February 1, 2016, failed to provide him with appropriate pain medications, and refused to honor his double cuff merit.
>
> Count 2: Defendants violated the ADA and/or RA by failing to accommodate LeGore's disability-related needs by assigning him to a top bunk without a ladder or steps despite his disability and low bunk permit, refusing to honor his double cuff permit, and failing to ensure he receives meals when he is bedridden.

(Doc. 5, p. 3).

LeGore suffers from neck and back pain and has low bunk and double-cuff permits (Doc. 86-1, pp. 11, 13). On February 1, 2016, he was transferred from the South Uppers gallery to the North Uppers gallery in Menard (*Id.* at p. 10, 17, and 19-20). Dethrow was the gallery officer when LeGore moved to the cell in North Uppers (*Id.* at p. 18). He informed Dethrow that he had a low bunk permit with double cuff, but his cellmate also had a low bunk permit (*Id.* at pp. 18-19). He informed Dethrow a second time that he had a low bunk permit but Dethrow just nodded his head and walked away (*Id.* at p. 19). LeGore showed him his permit and his Veteran Affairs ("VA") disability paperwork but did not inform him that he would suffer harm if he stayed on the top bunk (*Id.* at p. 90). He also spoke to Allsup about his low bunk permit and wrote two grievances (*Id.* at p. 17). On one occasion Allsup told him that she would look into it (*Id.* at p. 14). She asked later if his permit was valid (*Id.* at p. 15). He did not tell her that he would suffer

harm but told her he had to jump and shimmy into the top bunk (*Id.* at p. 91). LeGore eventually received the low bunk from his cellmate when he showed another officer his permit (*Id.* at p. 16). The officer asked for his cellmate's permit, but the cellmate did not actually have a valid permit, and LeGore was provided the lower bunk (*Id.* at p. 16). It took several months before he received his low bunk.

LeGore also testified that he wrote a letter to Dr. Trost about not receiving a low bunk in the North Uppers (Doc. 86-1, p. 17). Although he had received care from Dr. Trost for a dislocated shoulder several years before the events in his Complaint took place, he did not see him after his transfer to the North Uppers (*Id.* at pp. 58-59, 63). He wrote him a letter to inform him that the correctional officers were not following his low bunk permit, that he had pain, and his cuff permit was not being honored (*Id.* at pp. 62-64, 109). He did not know if Dr. Trost received the letter; he put the letter in the door and in the locked box addressed to Dr. Trost (*Id.* at pp. 63-64). Apparently Dr. Trost did not receive the letter, and the prison does not have a record of the letter (Doc. 79-2, pp. 1-2; 79-3, p. 2).

LeGore testified that Janette Cowen did not have anything to do with his low bunk permit and should not have been a party to the case (Doc. 86-1, p. 17). He also testified that Dethrow and Allsup never denied him medications or participated in cuffing him at any time (*Id.* at pp. 21, 24). LeGore testified that the issues with his double-cuffing permit not being recognized occurred while he was in the South Uppers (*Id.* at p. 22). It happened on a number of occasions while in the South Uppers but not as much after his transfer (*Id.* at p. 23). In response to Defendants' amended answer, LeGore stated that the claims in his Complaint were only about issues in the North Uppers and only about his low bunk permit (Doc. 94, p. 2).

LEGAL STANDARDS

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014), citing FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to

serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

C. **ADA and RA**

In order to make out a *prima facie* case of discrimination under both the ADA and the RA, a plaintiff must show: (1) that he suffers from a disability as defined in the

statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The RA further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a). *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015).

## ANALYSIS

### A. Frank Lawrence

Frank Lawrence was added to the case in his official capacity as the warden of Menard for the sole purpose of carrying out any injunctive relief that LeGore might obtain in this case. LeGore is no longer housed at Menard; he is currently housed at Western. A prisoner's request for injunctive relief is rendered moot by his transfer to another prison. *Higgason v. Farley*, 83 F.3d 807, 812 (7th Cir. 1996); *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008). The request is moot unless "he can demonstrate that he is likely to be retransferred." *Higgason*, 83 F.3d at 811 (citing *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). Allegations of a likely retransfer may not be based on mere speculation. *Id.* LeGore is currently housed at Western, and he has made no showing that he is likely to be transferred back to Menard. Accordingly, his request for injunctive relief is denied as moot, and Frank Lawrence is dismissed.

### B. John Trost

There is no evidence that Dr. Trost was deliberately indifferent to LeGore's need for a bottom bunk. Dr. Trost had no knowledge that LeGore did not have access to a bottom bunk or that he was in any pain. Although LeGore testified that he wrote a letter

to Dr. Trost, there is no evidence that Dr. Trost received that letter. Dr. Trost testified that he did not receive the letter and the prison does not have a record of the letter being received. LeGore testified that he submitted the letter by placing it in the prison mail, but he does not know if it was actually received by Dr. Trost. In his response to the motion for summary judgment, LeGore argues that Dr. Trost received the letter and was aware of his concerns through records and conversations (Doc. 89, p. 2), but he fails to provide any evidence to support these arguments. He testified that he did not see Dr. Trost after transferring to the North Uppers, and there is no evidence that they had any conversations or that there were any records that would have put Dr. Trost on notice that LeGore did not have access to a low bunk. Because there is no evidence from which a jury could find that Dr. Trost was aware that LeGore did not have access to a low bunk, the Court finds that Dr. Trost is entitled to summary judgment.

### C. Jeanette Cowan

The Court also finds that Cowan is entitled to summary judgment. LeGore testified that he has no claims against Cowan and that she should not have been added to his lawsuit (Doc. 86-1, p. 17-18). He also testified that she did not participate in denying him access to a low bunk or double-cuff, nor did she fail to provide him with proper pain medications (*Id.*). Accordingly, summary judgment is granted as to Cowan.

### D. Krista Allsup and Dustin Dethrow

To the extent LeGore's Complaint alleges that Defendants Allsup and Dethrow were deliberately indifferent in providing him proper medical care and in failing to double-cuff him, Allsup and Dethrow are entitled to summary judgment. LeGore testified that neither defendant denied him pain medications nor cuffed him while he

to Dr. Trost, there is no evidence that Dr. Trost received that letter. Dr. Trost testified that he did not receive the letter and the prison does not have a record of the letter being received. LeGore testified that he submitted the letter by placing it in the prison mail, but he does not know if it was actually received by Dr. Trost. In his response to the motion for summary judgment, LeGore argues that Dr. Trost received the letter and was aware of his concerns through records and conversations (Doc. 89, p. 2), but he fails to provide any evidence to support these arguments. He testified that he did not see Dr. Trost after transferring to the North Uppers, and there is no evidence that they had any conversations or that there were any records that would have put Dr. Trost on notice that LeGore did not have access to a low bunk. Because there is no evidence from which a jury could find that Dr. Trost was aware that LeGore did not have access to a low bunk, the Court finds that Dr. Trost is entitled to summary judgment.

**C. Jeanette Cowan**

The Court also finds that Cowan is entitled to summary judgment. LeGore testified that he has no claims against Cowan and that she should not have been added to his lawsuit (Doc. 86-1, p. 17-18). He also testified that she did not participate in denying him access to a low bunk or double-cuff, nor did she fail to provide him with proper pain medications (*Id.*). Accordingly, summary judgment is granted as to Cowan.

**D. Krista Allsup and Dustin Dethrow**

To the extent LeGore's Complaint alleges that Defendants Allsup and Dethrow were deliberately indifferent in providing him proper medical care and in failing to double-cuff him, Allsup and Dethrow are entitled to summary judgment. LeGore testified that neither defendant denied him pain medications nor cuffed him while he

was in the North Uppers.

As to his claim that Allsup and Dethrow were deliberately indifferent in denying LeGore access to the bottom bunk, it is undisputed that LeGore had a bottom bunk permit and that he spoke to both Allsup and Dethrow about the permit. Because it was believed that his cellmate also had a bottom bunk permit, LeGore was not able to access the top bunk until several months later when it was discovered that his cellmate did not, in fact, have a permit.

Defendants instead argue that this delay in receiving a top bunk did not cause LeGore any harm. A delay can amount to deliberate indifference if it unnecessarily prolongs a plaintiff's pain. *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). "In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (internal citations omitted). LeGore testified that no medical professional has told him that he has or will suffer additional harm in the future because he had the top bunk for several months (Doc. 86-1, pp. 25, 36). Although he did testify that being on the top bunk re-aggravated his injury and he suffered more pain during the time he was forced to sleep on the top bunk, he acknowledged that he only went to the healthcare unit once while housed in the North Uppers for pain in his back and was provided with Ibuprofen (*Id.* at pp. 24, 28, 67, and 79). And he had incidents of pain in his back prior to being housed on the top bunk

and after he received the lower bunk (*Id.* at pp. 60, 80, 83).[2] He fails to point to any medical evidence to suggest that the delay in receiving the bottom bunk was detrimental to his condition, nor has he demonstrated that the pain he did experience was caused by having the top bunk and not merely a result of his underlying condition.

The Court also notes that LeGore testified that he did not tell either Allsup or Dethrow that being housed on the top bunk would cause him pain (*Id*. at pp. 90-91). He only told them that he had a permit and a VA disability (*Id*.). Thus, there is no evidence from which a jury could find that LeGore suffered any additional harm or that Allsup or Dethrow were aware that he would suffer harm by not receiving the top bunk. Accordingly, Allsup and Dethrow are entitled to summary judgment on LeGore's deliberate indifference claim.

**E.  ADA/RA Claims**

IDOC is also entitled to summary judgment on LeGore's ADA and RA claims. LeGore initially sought a new cell assignment at Menard and an order to comply with his low bunk and double-cuffing permit (Doc. 9, p. 1). But as the Court has already pointed out, LeGore is now housed at Western, and thus any request for injunctive relief is moot. LeGore also seeks monetary damages. Although the Seventh Circuit has not addressed whether intentional discrimination is required for an award of compensatory damages, several other circuits require intentional discrimination. *See Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 917-18 (N.D. Ill. Feb. 19, 2010) (*Nieves-Marquez v. Puerto Rico*, 353 F.3d

---

[2] LeGore testified that at the time of the deposition on January 24, 2019, that he suffered from stabbing pain every month (Doc. 86-1, p. 83). He also felt hot needle, stabbing pain while he was housed in both the South Uppers and North Uppers, although he testified he had them more in the North Uppers (*Id.* at p. 80).

108, 126 (1st Cir. 2003); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-53 (10th Cir. 1999); *Wood v. President and Trustees of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219-20 (11th Cir. 1992)). These same courts generally apply a "deliberate indifference" standard to determine whether the alleged discrimination was intentional. *Id.* at 918. Some circuits have held that such discrimination requires a higher showing of discriminatory intent. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-65 (3rd Cir. 2013) (identifying split and adopting majority standard of deliberate indifference).

Even under the lesser standard, LeGore has failed to demonstrate that the discrimination was intentional. The Court has already found that LeGore failed to offer any evidence that the individual defendants were deliberately indifferent in not providing him the top bunk. Thus, his ADA and/or RA claims fail under this same standard.

LeGore also fails to offer evidence that he was denied a benefit based on his disability. In his response to IDOC's motion, he merely states that IDOC did not have adequate staff to provide him with adequate care and they failed to remedy the unlawful conditions (Doc. 88, p. 2), but he offers no evidence that IDOC violated the ADA and/or RA by denying him benefits because of his disability. LeGore had a low bunk and double-cuff permit (Doc. 86-1, p. 13). He did not receive the low bunk in the North Uppers because his cellmate also claimed to have a low bunk permit. When it was discovered that the cellmate did not have a permit, LeGore was given the bottom bunk.

As to the double-cuffing, LeGore does not address this issue in his response. He

testified that these were isolated incidents when the officers did not have extra sets of cuffs (Doc. 86-1, p. 22). He testified that the officers did not double cuff him because they did not have an extra set of cuffs (*Id.* at p. 22). On a number of occasions, the officers would tell him that they did not have a second set of cuffs and would cuff him in the front, which LeGore testified he was okay with because it did not injure his shoulder (*Id.* at pp. 22 and 92). He also testified that the occasions when he was single cuffed occurred when he was housed in the South Uppers, not in the North Uppers which is the subject of this lawsuit (Docs. 86-1, p. 22; 1, pp. 7 and 22).[3] Further, the defendants did not participate in any double cuffing. Because he has not offered any evidence to suggest that his double cuff permit was not honored in the North Uppers, IDOC is entitled to summary judgment.

To the extent the Complaint alleges that the defendants failed to ensure that he received food trays when he was bedridden, LeGore testified that those occasions also happened when he was in South Uppers and not in the North Uppers where the allegations in his Complaint took place. Accordingly, IDOC is also entitled to summary judgment on LeGore's claim that he did not receive food trays.

## Conclusion

For the reasons stated above, the motion for summary judgment (Docs. 78, 79) filed by John Trost is **GRANTED**. Further, the motion for summary judgment (Docs. 85, 86) filed by Krista Allsup, Jeanette Cowan, Dustin Dethrow, Frank Lawrence, and the Illinois Department of Corrections is **GRANTED**. The Clerk is **DIRECTED** to close the case and

---

[3] In his response to Defendants' Amended Answer, LeGore reiterates that his Complaint only focuses on his time in the North Uppers and his access to a low bunk.

enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** March 9, 2020

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**